*1076 OPINION.
Teammell :
The petitioners contend that their proportional shares of the amount of $36,000 which was paid in stock to Sayre in 1923 in settlement of his claim for his share or interest in the good will of the partnership are allowable deductions either as an ordinary and necessary business expense and/or as a loss. The respondent contends that the amounts represent payment for Sayre’s interest in the good will of the partnership, that they are therefore capital expenditures and as such are not allowable deductions.
In support of their contention the petitioners urge that the payment made to Sayre was for the purpose of avoiding the legal action threatened by him and its injurious effects as well as to assure his retirement from the business. They also urge that under the agreement of January 20, 1920, he was barred from any payment for good will.
The petitioners testified that in making the payments here in controversy they did not consider that they were made for any interest *1077 that Sayre might have had in the good will of the partnership, but that they made them for the purpose of preventing legal action. They also testified that they considered that when Sayre had received the payments provided for in the agreement of January 20, 1920, he would not be entitled to any further payments of any kind.
An examination of the partnership agreement of January 20, 1920, discloses that the term “ good will ” is used only twice. Once, in a provision giving four in number of the partners the power, in event that number of the partners desired to sell “the assets, business, and good will of the partnership as a going concern, either for cash or wholly or in part for securities or other property,” to make such sale. The term is used again in the following provision:
Tenth. — In tbe event of the termination of this partnership at the end of the term hereby created or prior thereto (except in the event of sale as herein-before provided) the share of the said partner, William IT. Vossler, shall be limited to the amount of capital contributed by him and his percentage of profits without taking into consideration any good will attached to the business of said partnership.
In view of the foregoing provision that the partner, Yossler, was not to receive anything on account of the good will of the business upon the expiration of the partnership, it is difficult to understand why a similar provision was not inserted in the agreement with respect to Sayre if it was intended, as the petitioners contend, that he, too, should not receive anything because of good will. It is true that the agreement did not specifically provide that upon expiration of the partnership Sayre should be paid anything on account of any interest he might have in the good will. However, on the other hand, it does not contain any provision that he should not be entitled to a payment on account thereof, as was specifically inserted with respect to Yossler. The absence of a provision barring Sayre from an interest in the good will becomes more significant when it is considered that he was to retire from the business at the expiration of the partnership agreement and that also he was to retire monthly the capital he had invested in the partnership, while Yossler was not to do either. Since there was no discussion among the partners prior to or at the time the agreement of January 20, 1920, was entered into as to what should be Sayre’s rights with respect to the good will of the petitioner at the expiration of the agreement, and in view of the fact that the agreement was silent with respect to Sayre’s rights thereto, but was specific that another partner should not be entitled to an interest therein, we are unable to concur in the contention of the petitioners that the agreement precluded Sayre from receiving any payment for good will.
The business carried on by the partnership formed under the agreement of January 20, 1920, had been carried on continuously *1078 by various partnerships since 1811. Since 1871 it had been operated at a profit every year except 1896 and 1920 and only in the latter year was it operated at a loss. Sales had increased from about $1,250,000 in 1880 to about $10,000,000 in the year ending January 31, 1923. The corporation whiT took over the assets and business of the partnership at its expiration on January 31, 1923, shortly thereafter carried the good will in its financial statement at a value of $500,000. We think it is clear that the partnership had good will of a substantial value. However, for our purpose it is not necessary to determine what that value was.
The good will of a partnership is ordinarily considered part of the property and assets of the firm and in the absence of a contrary agreement is to be accounted for upon the termination of the partnership. Here the partnership had a valuable asset which was not carried on its books, and consequently was not reflected in the capital accounts of the partners upon the partnership books. Sayre demanded that upon termination of the partnership this asset should be considered and that upon his retirement from the business he should be paid something on account of it. Since there was no agreement to the contrary, he was entitled to have the good will accounted for upon termination of the partnership. To the extent that the value of the good will increased the surplus of the partnership assets over liabilities, he had an interest therein. From the record in the case we think it was for this interest that the remaining partners agreed to pay him $36,000. The amount having been paid to Sayre for this purpose, we think it constituted a capital expenditure, and consequently the proportional parts thereof contributed by the partners were likewise capital expenditures and are therefore not allowable deductions in determining net income.
It may be well that the partners in contributing their porportional parts of the payments made to Sayre considered that they were making such payments solely for the purpose of avoiding litigation, but the fact remains that as a result of the expenditures so made by them they increased their own interest in the excess of the partnership assets over liabilities. The avoidance of litigation was only incidental to the object accomplished by the payment.
In this connection it is to be observed that by the agreement of January 12, 1923, Sayre agreed that for a period of five years he would not become interested in or identified with any business of a similar character to that carried on by the partnership or by the new corporation. The record does not show what consideration, if any, was given for this promise on the part of Sayre. But whatever the consideration was, the fact remains that the promise was acquired in connection with the settlement of Sayre’s claim with respect to *1079 good will. To tbe extent that any part of the $36,000 was in payment for this promise it was capital expenditure. See News Leader Co., 18 B. T. A. 1212; Aluminum Products Co., 24 B. T. A. 420.

Judgment will Toe entered for the respondent.